## DANIEL v. SORRELLS AND ANOTHER.

1. The statutes of this State authorize the registraion of a deed conveying land at any time after the expiration of the period prescribed for that purpose, and when thus recorded makes it operative from the day of registration, as to "creditors and subsequent purchasers." But the "creditors" referred to are not creditors at large—they are such as have obtained a lien by the recovery of a judgment, &c.; as to the former, the purchaser's title might be protected, by recording his deed at any time before a lien attached.

Daniel v. Sorrells and another.

2. The title of the purchaser of land at a sale under execution, will not be prejudiced, though he have notice of an unregistered deed, if the plaintiff in execution was ignorant of its existence.

Writ of Error to the Circuit Court of Chambers.

THIS was an action of trespass to try title to, and to recover, &c. the south-east quarter of section two, of township twenty three, of range twenty-five, situated in the county of Chambers. The suit was commenced against the defendant, Sorrells, alone, and his co-defendant, Smith, who was his landlord, was permitted to come in and defend with him.

The cause was tried on the plea of *not guilty*, a verdict returned in favor of the defendants, and judgment rendered accordingly. On the trial, a bill of exceptions was sealed at the instance of the plaintiff, from which it appears that a patent was read to the jury, showing that the United States, conveyed the land in question to William Graggs and Benjamin Loyd. A deed was also adduced, showing that the patentees conveyed the north half of the land to John Sorrells. The plaintiff then read to the jury, the record of a judgment rendered by the County Court of Chambers, on the 25th July, 1842, in favor of John Miles, against John Sorrells, upon which a *fieri facias* issued, on the 5th August next thereafter, was placed in the hands of the sheriff of that county, and by him levied on the land sought to be recovered in this action. This execution was indorsed levied, but was returned without a sale having been made; process in the nature of a *venditioni exponas* was then issued, directing the sheriff to sell the land thus levied on, on which he returned that he had sold the lands at the court house door of his county, at public sale, and that the plaintiff became the purchaser, for the sum of twenty dollars.

The plaintiff then produced the sheriff's deed, from which it appeared that he became the purchaser of the land in controversy on the 1st of February, 1843.

The defendants then proved and read to the jury, a deed from John Sorrells to the defendant, Smith, dated 22d day of January, 1842, by which the land described in the the declaration was conveyed to the latter. This deed was placed

in the office of the clerk for registration, on the 25th August, 1842, but was not recorded until December, 1842. Proof was adduced, tending to show, that at this latter period, the plaintiff had actual notice of the deed. The question was, whether the defendant, Smith, had lost his right to the land, as against the plaintiff, by the failure to have it recorded in due time. Upon this point, the court charged the jury, that if the plaintiff, previous to his purchase at sheriff's sale, had notice of the deed from Sorrells to Smith, then he could not be regarded as a subsequent *bona fide* purchaser, without notice under the statute.

L. B. ROBERTSON, for the plaintiff in error, contended, that to divest the rights of the plaintiff, acquired by his purchase, it should have been shown that he had notice of the unregistered deed to Smith, previous to the rendition of the judgment in favor of Miles. Notice afterwards would come too late for any purpose. [14 Mass. Rep. 296; 4 Litt. Rep. 273; 9 Pick. Rep. 105.

2. The act of 1823, made notice of a previous unregistered conveyance, executed *bona fide*, operative against a subsequent purchaser. But the statute of 1831, (Clay's Dig. 154, § 20,) was intended to modify the law in this respect. It declares, that deeds, &c. recorded after the time limited by law, shall be valid and effectual from the period of their registration, with a *proviso*, that such registration shall not affect the rights of creditors and purchasers, which shall have previously vested.

If Miles had purchased at the sale under his own execution, issued upon a judgment rendered after the expiration of the time prescribed for registration, his title would have been good; and it is conceived the plaintiff's is equally valid. The judgment became an operative lien from the time it was rendered, which was more than six months from the making of the deed from Sorrells to Smith; and the subsequent registry should not impair its lien. [1 Ala. Rep. 316; 3 Id. 560; 6 Id. 45, 480; 7 Id. 53, 64.]

P. M. ALLISON, for the defendant in error, insisted upon these points: 1. When the plaintiff in an action to recover

Daniel v. Sorrells and another.

the possession of land, claims by purchase at a sale under execution, it is necessary to show, that the defendant in execution had a legal title when the judgment was obtained, to entitle him to recover. [4 Ala. Rep. 584.] From that time a lien attaches upon the real estate of the debtor. [3 Ala. Rep. 560.] 2. The judgment in favor of Miles only operated to restrain Sorrells' control over his lands, so as to prevent him from defeating its satisfaction by an alienation ; but it did not divest him of the title to it. [2 Stew. Rep. 401; 1 N. & McC. Rep. 405.]

3. The plaintiff can only be regarded as a purchaser from the date of his deed from the sheriff—he can only recover damages from that time ; and can go back to the judgment merely to ascertain what estate or interest he purchased. A sale by the sheriff may be within the statute of frauds. (Clay's Dig. 205, § 17; 216, § 72; 3 Ala. Rep. 20; 6 Id. 204; 7 Id. 115; Minor's Rep. 331.]

COLLIER, C. J.—The second section of the act of 1823, in respect to the registration of deeds, enacts, that any deed or conveyance of lands, &c. lying in this State, which shall be made after its passage, shall be void against a subsequent *bona fide* purchaser, or mortgagee, for a valuable·consideration, unless the same shall have been acknowledged, &c., and lodged with the clerk of the county court of the county in which the lands, &c. are situated, to be recorded. [Clay's D. 154, § 18.] By the first section of the act of 1828, "concerning registration of deeds and patent,"·it is declared that "all deeds recorded within six months from the date of their execution, shall have force, and be valid and operative between the parties thereto, and subsequent creditors and purchasers; and all deeds recorded after the expiration of six months, shall be valid and operative from the date of their registration, as to creditors and subsequent purchasers : *Provided*, the same shall be valid at all times, between the contracting parties thereto." [Clay's Dig. 256, § 8.]

These statutes, as their terms import, are intended to provide for the recording of deeds, &c., and declare the consequence of a failure to comply with their requisitions. The object of registration is to give notice of the existence of the

instrument, and thus prevent subsequent purchasers and others from being prejudiced by secret conveyances; it has consequently been held so often, as to be now regarded the settled doctrine, that actual notice of the existence of a deed is equivalent to its registration. See the cases on this point collated in 2 Kinne's Comp. 192-3 ; 2 U. S. Dig. 41, §§ 380 to 385. The registry of a deed in conformity to the directions of a statute, is constructive notice of it, conclusive upon subsequent purchasers and others against whom it is made to operate.    See cases cited in 2 Kinne's Comp. 194-5, and in 2 U. S. Dig. 34 to 43.    And where one is in possession of premises, a purchaser is charged with an implied notice of the nature of his title.    [2 Mylne & K. Rep. 629 ; 2 Sch. & Lef. Rep. 327 ; 16 Ves. Rep. 249; 1 Meriv. Rep. 262; 2 Sum. Rep. 486 ; Ohio L. Ins. & Trust Co. Co. v. Ledyard, and Smith & Co. v. Zurcher, use, &c. at this term, and cases there cited.]   In Jackson v. Burgott, 10 Johns. Rep. 468, the court considered that the question whether notice in any other manner than by registration would defeat a subsequent purchaser, depended upon the construction of the statute, and concluded that such notice was not merely a trust or equity, binding on the conscience.    That " in the case of a second purchaser with notice, *no estate passes to him* by the deed; consequently the cognizance of notice belonged as well to a court of law as equity.

The case of Avent v. Read, 2 Stewt. Bep. 488, was commenced in 1822, and its decision was consequently not influenced by either of the statutes above cited.    It was there said, that "the act of 1811, only restrains the operation of deeds of land, for a failure to have them registered, against subsequent and *bona fide* purchasers, and mortgagees *without* notice, without saying any thing of creditors ;" and that " registration by the vendee, seems not to have been made necessary to give title as against the vendor's creditors."    It was added, that a purchaser under execution might have been considered as standing in the situation of the judgment creditor, if it would avail him any thing.    But as the statute did not require a deed to be recorded as against creditors, it should have been referred to the jury to inquire whether the

proof showed that the purchaser had notice of the previous sale and conveyance by the defendant in the judgment.

We have seen that the subsequent act of 1828, declares that deeds duly recorded within the time it prescribes shall " be valid and operative between the parties thereto, and subsequent purchasers and creditors;" and if recorded after that time, shall operate "from the date of their registration as to creditors and subsequent purchasers: *Provided*, that the same shall be valid at all times between the contracting parties thereto." Taking this entire section together, it seems to us to indicate the intention of the legislature to postpone the purchasers of land claiming under conveyances not duly registered, to the *bona fide* claims of purchasers and creditors. If this conclusion were doubtful, upon a just interpretation of the body of the section, the *proviso* in declaring that a deed shall be valid between the parties, without reference to its registration, in effect provides, that without it, it shall be inoperative against persons coming within either of the categories mentioned, of purchaser or creditor. The material question then, in the case at bar, is, whether a creditor at large may defeat a conveyance, by setting up the failure to register it in due season, or in what condition must he be placed to authorize him to insist upon the omission?

By a statute of Virginia, it is enacted, that all bargains, sales, and other conveyances whatsoever, of any lands, &c., which shall thereafter be made and executed, shall be void as to all creditors, and subsequent purchasers, for a valuable consideration, without notice; unless they shall be acknowledged or proved, and lodged with the clerk, to be recorded, according to the directions of the act; but the same as between the parties and their heirs, and as to all subsequent purchasers with notice thereof, or without valuable consideration, shall nevertheless be valid and binding. [1 v. Rev. Code, 1819, 362.] In Guerrant v. Anderson, 4 Rand. Rep. 208, the Court of Appeals of that State, in construing this enactment, makes void all deeds, (of the description embraced by it, which are not regularly lodged for registration,) " as to creditors, absolutely, and without qualification; 'and as to subsequent purchasers with the qualification, for valuable

consideration, and without notice." The words "for valuable consideration" in the section, certainly have no application to creditors, there being none of any other denomination; nor have the words "without notice," which make a part of the qualification of a purchaser to resist the unrecorded deed, any relation to a creditor, either by its position in the sentence, or its context." The court further said, that before the words "for valuable consideration without notice," were inserted in the act, a court of equity would postpone a subsequent purchaser on the ground that he was guilty of a fraud in purchasing what he knew, in justice belonged to another, though the unregistered deed was void at law. But, "since the insertion of those words in the statute, that rule has become a rule of law; but that rule was never extended by a court of equity to *creditors* nor was it intended to be so extended by the legislature; because though a creditor has notice of an unrecorded deed, he commits no fraud by crediting the grantor upon his general responsibility. If, in the lawful pursuit of his rights, he gets a lien on the property, by the delivery of an execution to the proper officer, as in the case before us, or otherwise, having equal equity with the party claiming under the deed, he falls within the settled rule of equity; that between parties having equal equity, he who has the law also, shall prevail."

It is provided by a statute of Massachusetts, that "no bargain and sale, or other conveyance, of any estate in fee simple, or for life, and no lease for more than seven years from the making thereof, shall be valid and effectual, against any person other than the grantor and his heirs and devisees, and persons having actual notice thereof, unless it is made by a deed recorded," &c. The effect of this statute has been several times considered by the Supreme Court of that State. In Farnsworth v. Childs, 4 Mass. Rep. 641, the case of a second purchaser, and an attaching creditor, were considered identical as it respects the effect of the notice; it was there held, that when express notice of a conveyance not accompanied by a change of possession is given to any person, and he shall soon after levy his execution upon the estate, as the property of the grantor, or take a second conveyance from him, before the grantee has had a reasonable time to put his

deed upon record, the first grantee shall hold. So where the defendant levied his execution upon land, which he knew had been previously conveyed to the plaintiff in the action, it was adjudged that the plaintiff was entitled to recover. [Davis v. Blount, 6 Mass. Rep. 487.] To the same effect is Prescott v. Heard, 10 Mass. Rep. 60 ; Brown v. The Maine Bank, 11 Ib. 153.] In the latter case it was said, that a title by an unregistered deed is not complete, and will not avail against all persons ; but it will avail, if *bona fide* and for a valuable consideration, against a subsequent conveyance or transfer, whether by deed or attachment and execution, where the purchaser or creditor has had actual notice. So in Priest v. Rice, 1 Pick. R. 164, it was held, that a creditor knowing of a conveyance of land made by his debtor, for a valuable consideration, which is not registered, cannot by an attachment and levy upon the land, obtain a title against the grantee. The court observed, that " the execution and delivery of the deed, completes the transfer from the grantor to the grantee ; the registry is to give notice, that others may not be prejudiced. Actual notice proved, is, to the person affected by it, as useful, and ought to be attended with the same consequences, as public notice in the registry, and implied notice, arising from possession under the deed, is as effectual as actual notice." It was attempted at the bar, to distinguish between creditors whose debts accrued before and after notice of a conveyance ; but the distinction was denied by the court. See also Cushing v. Hurd, 4 Pick. R. 253 ; Moore v. Watson, 1 Root's R. 388.

The statute of New Jersey enacts, that every deed or conveyance of lands, to any purchaser, shall be void and of no effect against a subsequent judgment creditor, or *bona fide* purchaser or mortgagee, for a valuable consideration, not having notice thereof, unless such deed or conveyance shall be acknowledged, or proved and recorded, or lodged for that purpose within fifteen days after the time of signing, sealing and delivering the same. In the construction of this statute, it has been held, that " the want of notice is as essential to the protection of a judgment creditor, as of a purchaser, or mortgagee. Such is the grammatical construction of the language of the section ; and such too, it may be fairly presum-

ed, was the intention of the legislature; otherwise, persons with a full knowledge of an honest transfer of real estate, might trust the grantor, and then obtaining a judgment, defeat the *bona fide* purchaser, who from negligence or ignorance, had omitted to have his conveyance recorded." When judgment is rendered on an attachment, and not earlier, the plaintiff acquires the character of a "judgment creditor;" and if at that time, he has notice of the previous conveyance, he is not entitled to the rights secured by the statute to a "judgment creditor." [Garwood v. Garwood, 4 Hals. R. 193.]

In Smith & Co. v. Zurcher, *supra*, we held, that notice to a creditor before his lien attached upon personal property, which had been mortgaged, would give the mortgagee a preference over the judgment and execution of the former. This case turned upon the construction of the first section of the act of 1828, "more effectually to prevent frauds and fraudulent conveyances, and for other purposes," which provides that deeds, &c. of personal property, in trust to secure debts, shall be recorded in the office of the clerk of the county court, &c., "or else the same shall be void against creditors and subsequent purchasers, without notice." [Clay's Dig. 255, § 5.] It is here decided, that the notice, within the meaning of this statute, applies as well to *creditors as subsequent purchasers*. The cases cited from Massachusetts and New Jersey, maintain the same doctrine upon statutes, not materially variant in this respect, from those in force in this State.

The terms of the Virginia statute are essentially different from those of the other States referred to, as well as our own. This is abundantly shown, not only by the act as we have cited it, but from what was said by the court in Guerrant v. Anderson, *supra*. The phraseology employed and the formation of the sentence, it was thought, clearly indicated, that the words "without notice," did not refer to "creditors," but to "subsequent purchasers." With this construction we are not inclined to find fault.

The act of 1823, we have seen, only makes the registration of a deed of lands necessary as it respects "a subsequent *bona fide* purchaser, or mortgagee, for a valuable consideration, not having notice thereof." The act of 1828, first ci-

Daniel v. Sorrells and another.

ted, merely declares, that deeds shall at all times be valid between the contracting parties; if recorded in six months shall not only be valid between the parties, but as to creditors and subsequent purchasers; and if recorded after the expiration of that period, shall be operative from the time of registration, as to " creditors or subsequent purchasers." This statute, it must be observed, says nothing about the effect of notice, to impair the rights of creditors and purchasers. Notwithstanding the silence of the statute in this respect, we apprehend there can be no question but actual notice of an unregistered deed would operate to postpone a subsequent purchaser. The doctrine which accords to notice in fact, the effect that results from registration, in conformity to a statute, it is said, turns upon the question of fraud. If one, with the knowledge that his vendor, or mortgagor, had conveyed absolutely, or conditionally, to another person, purchases the same land, it would be a fraud in him to insist upon his purchase, because the first deed was not registered. He was informed of its existence, and if he had read it from the record would have learned nothing more. Registration was required for the purpose of giving information, and if this end is effected in any other manner, neither reason or justice demand, that a subsequent purchaser should be preferred to one who claims under a prior unregistered deed. See the American cases collected in 2 Kinne's L. Comp. 193; Fenno, et al. v. Sayre & Converse, 3 Ala. Rep. 458. See also, 10 Pick. Rep. 72; 3 Stew. & P. Rep. 397. But will this reasoning apply to a creditor of a grantor? Or are our registry acts to be regarded as parts of an entire system, and construed *in pari materia*, so that when the act of 1828, made registration necessary as to creditors, the notice recognized by the statute of 1823, immediately referred itself as well to creditors at large, as to purchasers? Or do not the two acts of 1828, provide for every thing, and even more than is embraced by the section of the act of 1823, which is recited; if this be so, is not that section repealed by implication?

We will not now stop to answer these questions. It may, however, be remarked, that we cannot very well perceive how fraud can be attributed to a creditor, who, with the

knowledge of an unregistered deed, credits the grantor upon his *general responsibility.* See 4 Rand. Rep. 208 ; 1 Metc. Rep. 212.

Surely it cannot be important that a purchaser should have ·his deed recorded in order to protect himself against the creditor of his vendor, who has no lien, either by the levy of an attachment, or the recovery of a judgment. Under such circumstances, if the grantor were himself the proprietor of the land, he might, in despite of the creditor sell and convey the same, so as to prevent its appropriation to the payment of the debt. A deed, whether registered or not, is operative between the parties, within the express terms of the statute, and the grantee must be allowed to occupy a position as favorable as the grantor, in respect to the creditors of the latter. If the grantor, again invested with the title, could sell, so as to impart to his purchaser a good title, why should not a previous purchaser be permitted to register his deed so as to prevent creditors from acquiring liens afterwards ? We have seen that the act of 1828, first cited, expressly provides for the recording of deeds, after the expiration of six months, and declares that they shall operate " from the date of their registration, as to creditors and subsequent purchasers."

In the case at bar, the deed from John Sorrells to the defendant, Smith, it is said, is dated the 22d January, 1842; the judgment under which the plaintiff claims was rendered on the 25th July of the same year, a few days after the six months had expired. The effect of the judgment was to give to the plaintiff therein, a lien upon the real estate of the defendant, of which he was the legal proprietor, or of which he had been, and had not so disposed of the property as against creditors, as to free it from liability for his debts. See Morris v. Ellis, 3 Ala. Rep. 560 ; Campbell, use, &c. v. Spence, et al. 4 Ala. Rep. 543. If the purchaser has omitted·to record his deed within the six months, and a judgment is then recovered against the vendor, that judgment will operate as a lien on the land, which a subsequent registration cannot override or defeat. To hold otherwise, would be to allow a deed not recorded within the time ᵥprescribed, when afterwards registered, to relate back and defeat the liens of creditors. This we have seen, is prohibited by the

statute.   [See  Bryan v. Cole, 10  Leigh's Rep. 497 ; 2  Lo-
max's Dig. 367-8.]

The lien, then, of the judgment creditor attached previous
to the time when the deed from Sorrells to Smith was
lodged with the clerk  to be recorded, and the land was con-
sequently subject to sale under his execution.    Whether the
purchaser from the sheriff was informed of the existence of
the unregistered deed, after the rendition of the judgment, is
not at all material.    For we have seen that he may invoke
the lien of the judgment creditor, to perfect his title.  [Avent
v. Read, *supra*.]    As no evidence was adduced to show that
Miles had notice of the sale to Smith, previous to the rendi-
tion of his judgment, it is unnecessary to inquire whether an
actual notice would have impaired his lien.    From what has
been said, it follows that a notice to the plaintiff in this case,
in December, 1842, after the lien of the judgment attached,
does not in any manner affect the title he acquired under the
judgment, execution, and sheriff's deed.    It remains but to
add, that the judgment is reversed and the cause remanded.