Shepherd *vs.* Burkhalter.

No. 65.—SAMUEL SHEPHERD, administrator, &c. plaintiff in error, *vs.* DAVID N. BURKHALTER, defendant in error.

[1.] If a mortgage be not recorded in the time prescribed by law, a judgment against the mortgagor, obtained before foreclosure, in the absence of notice to the judgment creditor, gains a priorty of lien upon the land constituting the mortgaged premises; and the purchaser of the property sold under such judgment, gets the interest which is sold, to the extent of the lien, and is subrogated to the rights of the creditor to that extent, although such purchaser may have had notice of the unrecorded mortgage.

[2.] Though at the Sheriff's sale, notice be given of such mortgage by one of the mortgagees, and proclamation be made by the Sheriff, that he sells the land subject to the mortgage, such notice and proclamation cannot divest the creditor's lien; and the interest of the creditor being an estate in the premises to the extent of such lien, the purchaser gets such estate, and, *pro tanto*, is entitled to the property.

[3.] If the rights of a purchaser in such a case, be affected by notice of the unrecorded mortgage, it can be only to so much of the mortgaged premises as exceeds in value the amount of the judgment under which it is sold.

[4.] This rule is consistent with that laid down by this Court in the case of *Neall vs. Kerrs & Hope*, (4 *Geo. R.* 161,) which declares that a junior mortgage with notice gains no preference; because, in the latter case, the lien is created by the contract of a party, whose conscience is affected with notice; in the former, the rights of the creditor, not being influenced by notice, the lien has attached by virtue of law.

[5.] Where an instrument, purporting to be a mortgage in all respects, except that it lacks the mortgagor's signature, is placed upon the record book in the Clerk's office, by that officer, and that signature is not put upon the record until more than three months have elapsed from the date of the instrument: *Held*, that constructive notice of the complete mortgage cannot be deduced from such a record, and that such registry is notice of the tenor and effect of the instrument recorded, only *as it appears upon that record.*

[6.] A *signature* is one of the essential requisites of every good deed, and when the signature of the mortgagor has not been placed upon the record book, until three months have passed from the date of the instrument's execution: *Held*, that the mortgage has not been duly recorded in the time prescribed by the Statute.

[7.] Where the fact of the due and proper record of the mortgage is submitted to the Jury, and turns upon the question, whether or not such signature was placed upon the record in the proper time, and the certifi-

cate of the Clerk, *who was one of the mortgagees, and interested in securing its priority of lien,* that such mortgage was recorded, goes to the Jury as *prima facie* evidence ; and where, nevertheless, one unimpeached and disinterested witness swears that the signature of the mortgagor was not on the record book until the proper time had elapsed, and another deposes that he had been told by the Clerk himself, that such was the case, and the Jury, notwithstanding, in effect find that the instrument was duly recorded : *Held,* that the verdict is so strongly and conclusively against the weight of the evidence, as to show improper bias, or gross misapprehension on the part of the Jury, as "to shock both the understanding and moral sense," and on this account a new trial should be granted.

Claim, in Marion Superior Court.    Motion for a new trial. Decided by Judge IVERSON.    February Term, 1853.

On the 2d day of November, 1840, Francis M. Collins made and executed a deed of mortgage to Burton W. Dowd and William Wells, in and to certain land lying in Marion, (now Taylor County.)

In February, 1841, the mortgage was recorded by the Clerk of the Superior Court of Marion County, who at the time was Burton W. Dowd, one of the mortgagees, except that the Clerk omitted to place the name and signature of the mortgagor upon the record. On the original mortgage was endorsed the following entry :

"Recorded in book E. 2d February, 1841.
                                    B. W. DOWD, Clerk."

On the 5th day of June, 1841, Kinchen McKinney obtained four judgments in a Justices' Court against Collins, for $30.00 each. *Fi. fas.* were issued upon said judgments, and levied upon the lands embraced in the mortgage, which were sold on the 5th day of April, 1842, at public outcry, to David A. Burkhalter, the defendant in error, and title executed to him by the Sheriff.

At the Sheriff's sale, notice was given to the Sheriff of the mortgage, by Wells, one of the mortgagees, and the Sheriff made this known, and sold the land subject to the mortgage.

At September Term, 1842, of Marion Superior Court, the mortgage was foreclosed, and *fi. fa.* issued thereon.   In 1848, it was levied on the land, and a claim was interposed by Burkhalter, the purchaser at the Sheriff's sale.   At August Term, 1852, the case reached the appeal docket by consent. In the meantime, Dowd had departed this life, and Shepherd, his administrator, was made a party plaintiff, and at the last mentioned term, a trial of the cause was had, when claimant proved by John Campbell, "that he was informed by said Burkhalter, that there was a defect in the registry of the mortgage made by F. M. Collins to Dowd and Wells, and a few days thereafter, he went into the Clerk's office, and examined the record book, in which deeds were recorded, and found the record of a mortgage, purporting to be made by said Collins to said Wells and Dowd, embracing a town lot, and one or more piney woods lots of land, of which he thinks the established copy in this case is the same in substance.   The record all seemed to be perfect and proper, except that the deed was not signed; thinks the seal was there, but no name was signed to it; is of the impression that Burkhalter knew of the defect in the record before the purchase by him.

A few days after the above, witness was in the Clerk's office with said Burkhalter, and on looking at the record of said mortgages, found the record complete; witness was astonished at this, and asked Dowd how it happened; Dowd, at first evaded the question; witness told him it was of no use to conceal anything, as he could be made to swear about it in Court; and then Dowd said he had added the name himself, and said he had the right to do it; witness thinks all this occurred after the sale of said land, and purchase by said Burkhalter, but does not remember the year, month or day."

Claimant also proved by Wiley Williams, "that during the session of Marion Superior Court, he had heard said Dowd say that in recording the mortgage, he had omitted to put Collins' signature upon the record; that he afterwards added the signature, and completed the record, but did not do so within the time prescribed by law for the record of said mort-

gage. This conversation occurred after Burkhalter had purchased at Sheriff's sale, but does not remember the year, &c."

The Jury found a verdict in favor of the plaintiff in the mortgage *fi. fa.* whereupon counsel for claimant moved the Court for a new trial, upon the following, among other grounds, viz:

That the verdict is contrary to the evidence in the case, and contrary to the charge of the Court and the law.

The Court sustained the motion and granted a new trial on this ground, to which counsel for plaintiffs excepted.

B. HILL, for plaintiff in error.

JONES, BENNING & JONES, for defendant in error.

*By the Court.*—STARNES, J. delivering the opinion.

This is a contest between a purchaser, claiming land by virtue of a Sheriff's sale, under certain Common Law *fi. fas.* and the plaintiffs in a mortgage *fi. fa.* issued against the same land, and it involves a question of priority of lien.

The date of the mortgage is prior to that of the *fi. fas.* but the claimant insists that it was not recorded within the time prescribed by law, nor foreclosed before the Common Law judgments against the mortgagor were obtained, and that the latter consequently gains a preference.

To this it is objected, that the purchaser had notice of the mortgage, though it was not recorded ; that the land in question was sold by the Sheriff, subject to the mortgage, and that it was in fact recorded.

The provisions of our Statute law on the subject of recording mortgages of land are as follows:

The 2d section of the Act of 1827, requires that all deeds of mortgage upon real property, " shall be recorded in the Clerk's office, &c. within three months from the date of such deed. " The 4th section provides, that " upon failure to record any mortgage, as hereinbefore required, within the time or times hereinbefore specified for recording the same, that

Shepherd *vs.* Burkhalter.

then and in such case, all judgments obtained before the fore-closure of the said mortgage, and also any mortgage executed after the same, and duly recorded, shall take lien on the said mortgaged property in preference to the said mortgage."

[1.] In view of the terms of this Statute, it is our opinion (especially in the absence of proof affecting the conscience of the judgment creditor with notice) that if the mortgage in this case were not recorded in time, the lien of these judgments obtained in the Justices' Court, attached to the land; and when it was sold under and by virtue of this lien, the purchaser, whether he had notice of the unrecorded mortgage or not, took the interest which was sold, viz : the estate of the judgment creditor in the land, and *quoad* that interest in the estate, must be subrogated to the rights of the creditor.

[2.] The notice given by the mortgagor, Wells, at the Sheriff's sale, and the proclamation made by the Sheriff, in consequence, that he sold the land subject to the mortgage, cannot affect this view of the case ; for the reason, that the Sheriff sold the interest of the judgment creditor, whatever that was, when he sold subject to the mortgage ; and if that interest was a priority of lien upon the land, to the extent of that lien it was superior, of course, to the interest of the mortgagee. In such case, neither the notice nor the Sheriff's proclamation could change the law and divest the lien of the judgment ; and *pro tanto*, the purchaser certainly took title to the property sold.

By some Courts it has been held, that a deed not duly registered, is void as to creditors, with or without notice. *Washington vs. Trousedale, Mart. & Yerg.* 385. And that a purchaser, in behalf of the creditor, holds the rights and occupies the place of the creditor, and will not be affected by notice of an unrecorded deed. *Guerrant vs. Anderson,* 4 *Rand.* 208.

The Supreme Court of Massachusetts, on the other hand, has held, that a creditor with notice of a previous unregistered conveyance for a valuable consideration, cannot, by attachment and levy, obtain a title against the grantee. *Priest vs. Rice,* 1 *Pick.* 164.

However this may be, there is nothing in this record which brings home notice to the creditor, and the case is not placed upon that ground.

[3.] If the rights of the purchaser, in this case, were affected by notice of the unrecorded mortgage, it could only be as to so much of the mortgaged premises as exceeded in value the amount of the judgments under which the land was sold ; for, as we have seen, to the extent of these judgments he takes the estate upon which their lien attached.

[4.] This view is consistent with that laid down by this Court, in the case of *Neall vs. Kerrs & Hope*, (4 *Ga. R.* 161,) where it was held that a junior mortgagee with notice, gains no preference ; because in the latter case, the lien is created by the contract of a party whose conscience is affected with notice ; in the former, the creditor being unaffected with notice, the lien is created by virtue of law.

[5.] Whether or not, the rights of the purchaser in this case were influenced by notice to him, as to any amount exceeding the judgments, must depend upon the evidence of notice, and so far as we are informed by the record, no such notice appears.

If there were no signature of the mortgagor, Collins, upon the record book until more than three months had elapsed from the date of the mortgage, we hold that constructive notice cannot properly be deduced from such a record. The purchaser in such case, can be held in reason, to have had notice from this record, only of what there appeared, viz : that an instrument was registered, which was incomplete, because lacking signature.

"It would seem," says one of the first lawyers of our age, "that the Courts might hold, without any violation of principle, that a purchaser should not be deemed to have notice of an equitable incumbrance, by the mere registry of it, unless it was duly registered." *Sugden*, 470.

Eminent Courts and Judges have so held. Chancellor *Kent*, for example, says in the case of *Frost vs. Beckman*, (1 *John. Ch. R.* 300,) "that the purchaser is not to be charged with

Shepherd *vs.* Burkhalter.

notice of the contents of the mortgage, any farther than they may be contained in the registry. The purchaser is not bound to attend to the correctness of the registry. The Act, in providing that all persons might have recourse to the registry, intended *that* as the correct source of information." The Chancellor goes on to say, that if the rule were otherwise, " the registry might prove only a snare to the purchaser, and no person could be safe in his purchase, without hunting out and inspecting the original mortgage, a task of great difficulty."

The Supreme Court of Pennsylvania holds similar doctrine, in the case of *Heister vs. Fortner*, (2 *Binn. R.* 40,) as the Supreme Court of the United States, in *Hodgson vs. Butts*, (3 *Cranch,* 155.) And this Court, in the case of *Herndon et al. vs. Kimball*, (7 *Ga. R.* 433,) has, in principle, laid down the same rule.

Though the facts of these cases are not the same with that at bar, yet the principle involved, is the same in all, viz : that the registry is notice of the tenor and effect of the instrument recorded, only as it *appears upon that record.*

[6.] We learned in our elementary lessons, that *signing, sealing and delivering*, were requisites necessary to every good deed.

If, then, this instrument, as it appeared in the record, lacked a *signature*, (though the signature were attached to the original and omitted by mistake,) it, of course, lacked one of the essential features of the mortgage deed, and was, in this regard, no record of that mortgage, until the name of the mortgagor was placed upon the record-book. If that were not done until more than three months from the date of the mortgage, then the instrument was not duly registered in terms of our Statute.

[7.] Whether or not the mortgage in question did lack the signature of the mortgagor, for more than three months from the date of its execution, was a question of fact submitted to the Jury, the evidence relating to which, we are called upon to consider, in determining whether or not the new trial was properly granted in this case. His Honor, Judge *Iverson*,

granted a new trial, upon the ground that the evidence proved the deed to have lacked the signature until after the time prescribed, and that the verdict was, consequently, contrary to evidence.

It is insisted for the plaintiff in error, that there was some evidence on both sides ; that the endorsement of the Clerk's certificate upon the mortgage, was *prima facie* evidence of its due and proper record ; and that though the weight of evidence may be against this view, still, it was the province of the Jury to determine this ; that they have done so, and their verdict should not be disturbed.

We concede that the certificate of the Clerk was *prima facie* evidence of the record ; but that evidence was rebutted by two unimpeached and disinterested witnesses. John Campbell swears, that he saw the record after Burkhalter's purchase, as he thinks ; that the signature was wanting, and that Dowd owned he had placed it there after he (Campbell) had first seen the registry. By Wiley Williams, it was proven, that Dowd admitted in his hearing, that he had omitted to copy the signature of the mortgagor upon the record-book, until after the time prescribed.

When we reflect that Dowd, who furnishes the *prima facie* testimony, was one of the mortgagees, and thus deeply interested in securing to the mortgage validity and priority of lien ; and that the testimony furnished by him is contradicted, positively and conclusively, by two witnesses, who are disinterested, (so far as we can judge from the record,) we are constrained to hold, that a case is presented for the extraordinary interposition of the Court, in arresting the verdict of a Jury, where there is some evidence on both sides ; because the conclusion is authorized, that there was some improper bias, or gross misapprehension, influencing the Jury, and that, to an extent which "shocks both the understanding and moral sense."

We will not lightly interfere with the province of the Jury to decide the facts, nor encourage others to do so. But when the case presented comes clearly within the rule above stated,

and recognized by this Court in several cases, reason and justice make it our duty to authorize a new trial.

It was stated, by the counsel for the plaintiffs in error, that the Court below, though of the opinion that he could sustain the motion for a new trial, on the first ground only, (which is the ground we have just been considering,) yet, said that, as he did have to decide against the plaintiffs in error, he would, *ex gratia*, grant a new trial on all the grounds taken, that the plaintiffs might have the opportunity of excepting on all; and our opinion on all these grounds is invoked.

Presenting, as the record plainly does, the judgment of the Court in granting a new trial, as based upon and solely influenced by the ground just considered, and affirming, as we do, the judgment on that ground, we deem it unnecessary, and think that it would be going out of the record, as it were, to express our opinion on the other grounds.

The judgment is affirmed.